Jennifer Janzen
120 Tustin Ave, Suite C, #135
Newport Beach, CA 92663
Telephone: 949-355-3698
Email: Jen9491975@gmail.com

FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT
JUL 10 2024
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

Plaintiff, Pro Se

PAID

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SANTA ANA DIVISION

| | |
|---|---|
| JENNIFER JANZEN, individual<br><br>Plaintiff,<br><br>v.<br><br>BETTER DEBT SOLUTIONS LLC, a California Limited Liability Company, MOHAMMAD GHARAFINIA, and ALLEVIATE FINANCIAL SOLUTIONS LLC, a California Limited Liability Company<br><br>Defendant. | Civil Case No 8:24-cv-01516-JVS-DFMx<br><br>1. WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT [47 U.S.C. §227(c) and 47 U.S.C. §227(b)] 2. NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT [47 U.S.C. §227(c)]<br>DEMAND FOR JURY TRIAL |

a

PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW Plaintiff Jennifer Janzen with her Original Complaint and will allege and show as follows:

PARTIES

1. Plaintiff JENNIFER JANZEN ("Plaintiff" or "Janzen") is a natural person, a resident of this District and was present in California for all calls received in this case.

2. Defendant BETTER DEBT SOLUTIONS LLC ("Better Debt") is a limited liability company organized and existing under the laws of California and can be served via registered agent Nima Asadi, Esq., 19200 Von Karman Ave, Suite 600, Irvine, California 92612.

3. Defendant MOHAMMAD GHAFARINIA, also known as MATT GHAFARINIA ("Ghafarinia") is a natural person, resident of California, managing officer of Defendant Better Debt, personally directed and participated in the calls alleged herein, and can be served at 7 Harcourt, Newport Coast, CA 92657.

4. Defendant ALLEVIATE FINANCIAL SOLUTIONS ("Alleviate") is a limited liability company organized and existing under the laws of California and can be served via registered agent CSC-Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, California 95833.

**JURISDICTION AND VENUE**

5. **Jurisdiction**. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 372 (2012).

6. **Personal Jurisdiction**. This Court has general personal jurisdiction over Defendants because Defendant Better Debt is a California limited liability company, Defendant Ghafarinia is a California resident, and Defendant Alleviate is a California limited liability company.

7. **Venue**. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at California residents, including the Plaintiff—occurred in this District and because the Plaintiff was residing in the Central District of California when she received a substantial if not every single call from the Defendants that are the subject matter of this lawsuit.

**THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227**

8. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

9. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system ('ATDS") or an artificial or prerecorded voice … to

any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

10. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

11. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A) or 47 U.S.C. § 227(b)(1)(B). *See* 47 U.S.C. § 227(b)(3).

12. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

13. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that

> deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C. Rcd. 1830, 1844 (2012)

14. The national Do Not Call Registry (the "Registry") allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. See 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

15. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential and wireless telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

16. The regulations exempt from liability a caller who has obtained the subscriber's signed, written agreement to receive telephone solicitations from the caller. 47 C.F.R. § 64.1200(c)(2)(ii). That agreement must also include the telephone number to which the calls may be placed. *Id.*

17. The Federal Communications Commission found that it "must mandate procedures for establishing company-specific do-not-call lists to ensure effective compliance with and enforcement of the requirements for protecting consumer privacy." *Id.* at ¶ 24.

18. These regulations are codified in part at 47 CFR 64.1200(d)(1)-(7). Specifically,

these regulations require a company to provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. 47 CFR 64.1200(d)(4) (emphasis added).

19. These policies and procedures prohibit a company from making calls for telemarketing purposes[1] unless they provide the required information. 47 CFR 64.1200(d).

20. Accordingly, all telemarketing calls violate the TCPA, unless Defendants can demonstrate that they have provided the required information on each of the calls.

21. There is a private right of action to enforce 47 C.F.R. § 64.1200(d) through § 227(c):

> [S]ection 227(c)(5)... empowers 'any person' to sue for damages and injunctive relief for do-not-call violations 'by or on behalf of' a company. In

---

[1] The distinction between the use of "telephone solicitation" in relation to the national do-not-call database and calls for "telemarketing purposes" in relation to the company-specific do-not-call list is significant. "Telephone solicitation" excludes calls made to a person with whom the company has as established business relationship, 47 CFR 64.1200(f)(14), which can be established by a "voluntary two-way communication". 47 CFR 64.1200(f)(5). But this business relationship can be terminated by a "do not call" request. 47 CFR 64.1200(f)(5)(i). "Telemarketing purposes", on the other hand, includes any calls made for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, regardless of any consent or established business relationship. 47 CFR 64.1200(f)(12). In other words, prior to making any telemarketing calls to anyone, regardless of relationship, a company must implement the company-specific do-not-call regulations, but it only need to comply with the national do-not-call registry provisions with respect to persons with whom it does not have an existing established business relationship.

> accordance with this statutory provision, the Commission's company-specific do-not-call rules provide that '[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity[.]' 47 C.F.R. § 64.1200(d).

*In re Dish Network*, 28 FCC. Rcd. 6574, ¶ 29 (2013).

22. These requirements are separate but cumulative. In other words, a company must comply with both the required information and comply with the national "do not call" database regulations. A failure to comply with either is a distinct violation of 47 U.S.C. § 227(c).

23. Though some of these requirements mention "residential" telephones, they were all extended to cover calls to cellular telephones as well as residential telephones. 47 CFR § 64.1200(e).

24. Further, a person or entity can be liable for calls made on its behalf in violation of the TCPA, even if that person or entity did not directly dial such calls. *See, e.g., In re Rules & Regs. Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995) (explaining that the FCC's "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any [TCPA] violations"). In fact, in May 2013, the FCC issued a binding declaratory ruling clarifying that sellers "may be held vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers . . . under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." *In re Joint Petition Filed by DISH Network, LLC et al. for Declarator*

*Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, 6584 ¶28 (2013).

25. Accordingly, an entity can be liable under the TCPA for a prohibited call made on its behalf under a number of theories including vicarious liability. Under those circumstances, including as described herein as to Defendants, the seller is properly deemed to have initiated the call through the person or entity that actually placed the call.

26. Individuals acting on behalf of a corporation may be held personally liable for violations of the TCPA if they "had direct, personal participation in or personally authorized the conduct found to have violated the statute." *Texas v. Am. Blastfax, Inc.*, 164 F.Supp.2d 892, 898 (W.D.Tex. 2001)("[A]n officer may be personally liable under the TCPA if he had direct, personal participation in or personally authorized the conduct found to have violated the statute and was not merely tangentially involved. Individuals who directly (and here, knowingly and willfully) violate the TCPA should not escape liability solely because they are corporate officers.").

27. A number of other federal district courts have concluded that individuals acting on behalf of a corporation may be held personally liable under the TCPA when they directly participated in, or personally authorized, the violative conduct. *See City Select Auto Sales Inc. v. David Randall Assocs., Inc.*, 885 F.3d 154, 161 (3rd Cir. 2018); *Bais Yaakov of Spring Valley v. Graduation Source, LLC*, No. 14-CV-3232 (NSR), 2016 WL 1271693, at *5 (S.D.N.Y. Mar. 29, 2016); *Sandusky Wellness Ctr., LLC v. Wagner Wellness, Inc.*, No. 3:12 CV 2257, 2014 WL 1333472, at *3 (N.D. Ohio Mar. 28, 2014); *Maryland v. Universal Elections,* 787 F. Supp. 2d 408, 416 (D.Md. 2011)(reasoning that "if an

individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force"); *Baltimore-Washington Tel. Co. v. Hot Leads Co., LLC*, 584 F. Supp. 2d 736, 745 (D. Md. 2008).

28. The regulations enforcing and interpreting the TCPA, also require that any person or entity that engages in telemarketing must transmit caller identification information.[2] 47 C.F.R. § 64.1601(e). This prevents a telemarketer from "spoofing" (using a false identification for their marketing calls) the telephone number from which the telemarketing call is made. Additionally, the regulations require telemarketers to -provide the name of the telemarketer when available by the telemarketer's carrier and the seller's customer service number.

29. Here Defendants did not comply with the requirements of 47 C.F.R. **§ 64.1601(e)** as it provided incorrect information regarding the number from which the calls were being made.

## FACTUAL ALLEGATIONS

30. Plaintiff personally and successfully registered her phone number ending in 3698 to the National Do-Not-Call Registry ("DNC") on November 30, 2012.

31. Plaintiff registered her phone number to gain seclusion from unwanted solicitation phone calls.

---

[2] The information required is: (1) the calling party number, "CPN" or automatic numbering information, "ANI"; and (2) the name of the telemarketer. 47 C.F.R. § 64.1601(e).

32. The calls were to Plaintiff's cellular phone which is Plaintiff's personal cell phone that she uses for personal, family, and household use. Plaintiff maintains no landline phones at her residence and has not done so for at least 10 years and primarily relies on cellular phones to communicate with friends and family. Plaintiff also uses her cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff pays the cell phone from her personal accounts and the phone is not primarily used for any business purpose.

33. Plaintiff did not consent to any of the phone calls alleged herein.

34. Plaintiff was registered on the National DNC at all times relevant to this Complaint.

35. Alleviate hired and authorized Better Debt to make prerecorded phone calls on its behalf to solicit the debt relief services of Alleviate.

36. Plaintiff received the first phone call on August 16, 2023, that displayed 239-378-5923 on the caller identification. Plaintiff did not answer the phone call. The phone call resulted in a voicemail that instructed Plaintiff to call 855-775-8814 for "financial help."

37. Plaintiff received the second phone call on October 5, 2023, that displayed 707-756-1012 on Plaintiff's caller identification. Plaintiff did not answer the phone call. The phone call resulted in a voicemail that instructed Plaintiff to call "Dan" at 877-813-1115. for a "debt consolidation loan."

38. Plaintiff received the third phone call on October 9, 2023, that displayed 925-584-3406 on Plaintiff's caller identification. Plaintiff did not answer the phone call. The phone

call resulted in a voicemail that instructed Plaintiff to call 833-652-7555 to reach "Dan from prompt financial help."

39. Plaintiff received the fourth phone call on August 16, 2023, that displayed 774-500-1760 on Plaintiff's caller identification. Plaintiff did not answer the phone call. The phone call resulted in a voicemail that instructed Plaintiff to call 833-652-7555 to reach "Dan from prompt financial help."

40. The phone calls on October 5, 2023, October 9, 2023, and October 16, 2023, all instructed Plaintiff to call "Dan."

41. Plaintiff did not have any interest in Defendants' services but called Defendant on May 31, 2024, at phone number 833-652-7555 to investigate the origin of the phone calls.

42. Plaintiff was connected to an agent, Taylor, with Better Debt Solutions who attempted to solicit Plaintiff for debt elimination services.

43. Taylor sent Plaintiff a Clixsign that contained a contract from Alleviate. This is how Plaintiff determined Better Debt was making the phone calls to solicit the debt elimination services of Alleviate.

44. The phone number 833-652-7555 that Plaintiff called is the same phone number that was instructed to call in the voicemails Plaintiff received on October 9, 2023, and October 16, 2023.

45. Plaintiff called phone number 855-775-8814 on June 5, 2024, as part of her continued investigation.

46. Plaintiff was connected to an agent who informed Plaintiff that she, "was already in the system."

47. Through information and belief, Plaintiff was "already in the system" because the company responsible for leaving the voicemail instruction to call phone number 855-775-8814 is the same company that called Plaintiff on October 5, 2023, October 9, 2023, and October 16, 2023.

48. Each of the phone calls received by Plaintiff was a ringless voicemail that deposited a prerecorded message on Plaintiff's cell phone.

49. Plaintiff did not have an existing business relationship with Defendants and never consented to receive prerecorded phone calls from Defendants.

50. Plaintiff did not consent to any of the calls alleged herein.

51. Table A shows the calls sent to Plaintiff by Defendants.

TABLE A:

| **Number:** | **Date:** | **Time:** | **Caller ID:** | **Notes:** |
|---|---|---|---|---|
| **1.** | 08/16/2023 | 9:04 AM | 239-378-5923 | Call Mike 855-775-8814 |
| **2.** | 10/05/2023 | 12:32 PM | 707-756-1012 | Call Dan 877-813-1115 |
| **3.** | 10/09/2023 | 12:50 PM | 925-584-3406 | Call Dan 833-652-7555 |
| **4.** | 10/16/2023 | 3:52 PM | 774-500-1760 | Call Dan 833-652-7555 |

52. Each was placed without the maintenance of an internal do-not-call policy. Every call was placed without training their agents/employees on the use of an internal do-not-call policy.

53. No emergency necessitated the calls.

54. Through information and belief, Defendants did not have a written do-not-call

policy while it was sending Plaintiff unsolicited calls.

55. Defendants placed multiple unauthorized prerecorded calls to Plaintiff within a twelve-month period to Plaintiff's residential phone line, listed on the National DNC, which violated 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c).

56. Every prerecorded voice message phone call was a knowing and willful violation because the act was intentional. A prerecorded voice message phone call can only be purposefully placed and cannot be an accident or mistake.

## DEFENDANT GHARAFINIA IS PERSONALLY LIABLE

57. Defendant Gharafinia is personally liable for all calls made to Plaintiff on behalf of Defendant Better Debt as he personally directed the phone calls be made.

58. Defendant Gharafinia wrote the scripts that their agents used on said calls described herein and trained their agents on live calls and on the usage of the scripts with potential customers.

59. Defendant Gharafinia purchased the equipment used to make the prerecorded phone calls and directed that the equipment be used to place prerecorded phone calls.

60. Defendant Gharafinia directed the telephone solicitors on which states to call, and during which hours to call.

61. Defendant Gharafinia knowingly and willfully violates the TCPA regulations and does so because it benefits him and his company.

62. Defendant Gharafinia either directly ordered his agents to ignore the National Do-Not-Call Registry, or indirectly by refusing to purchase the National Do-Not-Call Registry.

63. Defendant Gharafinia is the manager of Defendant Better Debt and controls the day-to-day operations of Better Debt and directs his employees, agents, salespersons, and solicitors to make TCPA-violating phone calls.

64. Defendant Gharafinia is the sole manager and owner of Defendant Better Debt and controls the day-to-day operations of Better Debt and directs his employees, agents, salespersons, and solicitors to make TCPA-violating phone calls.

65. Defendant Gharafinia is the mastermind who schemed, planned, directed, initiated, and controlled illegal and fraudulent behavior.

66. Defendant Gharafinia understands the conduct violated the TCPA and refused to alter their behavior and has done nothing to stop the unlawful, fraudulent, and unethical behavior they directed.

ALLEVIATE IS VICARIOUSLY LIABLE FOR THE PHONE CALLS

67. Alleviate is "vicariously liable" under federal common law principles of agency for TCPA violations committed by third-party telemarketers," such as Better Debt. *In re Joint Pet. filed by Dish Network, LLC*, 28 F.C.C.R. 6574, 6582 (2013).

68. Alleviate markets debt relief services through direct telephone solicitation by its hired telemarketer, Better Debt, who acts on its behalf. Better Debt enrolls potential clients for Alleviate and accepts those leads with full knowledge that the phone call that contacted the customers violated the TCPA.

69. Better Debt made the phone calls on behalf of Alleviate with the actual knowledge and authority of Alleviate.

70. Alleviate directs, controls, authorizes, and pays Better Debt to generate leads for legal services through telephone solicitation. Moreover, they require, authorize, or at least permit Better Debt's telemarketers to solicit explicitly for debt relief representation.

71. Alleviate sets the criteria for qualifying leads, which Better Debt must follow, and Better Debt transfer leads qualified on those criteria exclusively to Alleviate. Plaintiff is unaware of the qualifying thresholds, but the salient question is how much consumer debt the potential client holds.

72. On information and belief, Alleviate wrote or at least approved the call script Better Debt's telemarketers use when qualifying leads for Alleviate.

73. Alleviate maintained interim control over Better Debt by controlling how and under what circumstances they would accept clients from Better Debt.

74. Better Debt's telemarketers are Alleviates associates and do nothing to disturb the impression that they work for and speak and act on behalf of Alleviate.

75. Better Debt' telemarketers' initial calls through Defendant Alleviates acceptance of a completed representation application, the telemarketing of Alleviates legal representation constitutes a singular, coordinated marketing effort devised, authorized, directed, and controlled by Alleviate, the principals, with Debt Advisor acting as Alleviates agent.

76. Debt Advisor, acting with actual and implied authority, made the prohibited calls, and qualified Plaintiff according to Alleviates criteria

**INJURY TO PLAINTIFF**

77. Defendants' calls invaded Plaintiff's privacy and were a nuisance.

78. Defendants' calls confused Plaintiff and caused Plaintiff to become aggravated.

79. Defendants' refusal to properly identify themselves and the company on whose behalf the phone calls were being made caused Plaintiff to spend valuable time investigating the origin of the phone calls.

80. Plaintiff was angry, frustrated, and annoyed by Defendants' phone calls.

81. Defendants' calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

82. Defendants' calls resulted in Plaintiff using her battery which resulted in more frequent charging of her cell phone, which reduced Plaintiff's enjoyment of her cell phone.

**COUNT ONE:**

**(Non-Emergency Robocalls to Cellular Telephones, 47 U.S.C. § 227(b)(1)(A)(iii))**
**(Against All Defendants)**

83. Plaintiff re-alleges and re-adopts paragraphs 1 through 82 of the Complaint as if fully set forth herein.

84. Defendants placed, or had placed on their behalf, four (4) prerecorded telemarketing telephone calls to Plaintiff's cellular telephone number without prior express written consent.

85. Defendants has therefore violated 47 U.S.C. § 227(b).

86. As a result of Defendants' unlawful conduct, Plaintiff is entitled to an award of

$500 in statutory damages for each call, pursuant to 47 U.S.C. § 227(b)(3)(B).

87. Plaintiff is entitled to an award of treble damages in an amount up to $1,500 for each call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(b)(3).

**COUNT TWO:**

**(Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))**

**(Against All Defendants)**

88. Plaintiff incorporates the preceding paragraphs 1 through 82 as if fully set forth herein.

89. Defendants placed, or had placed on their behalf, telemarketing telephone calls to Plaintiff's residential telephone number.

90. Plaintiff's telephone number was on the National Do-Not-Call Registry for more than 30 days at the time of calls.

91. Plaintiff received two or more such calls in a 12-month period.

92. Plaintiff is entitled to an award of $500 in statutory damages for each call pursuant to 47 U.S.C. § 227(c)(5) for each of four (4) solicitation phone calls.

93. Plaintiff is entitled to an award of treble damages in an amount up to $1,500 for each call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(c)(5)

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Jennifer Janzen prays for judgment against the Defendants jointly and severally as follows:

A. An order declaring that Defendants' actions, as set out above, violate the TCPA because they are a violation of 47 U.S.C. §§ 227 (c), 47 C.F.R. §§64.1200(c)(4) and/or 47 C.F.R. § 64.1601(e);

B. An order declaring that Defendants' actions, as set out above, violate the TCPA because they are a violation of 47 U.S.C. § 227(b)(1)(A)(iii) and (B).

C. An award of statutory damages under the Telephone Consumer Protection Act;

D. An award of treble damages;

E. All other relief, in law and in equity, to which Plaintiff may be entitled.

July 2, 2024,

Respectfully submitted,

Jennifer Janzen
Plaintiff, Pro Se
120 Tustin Ave, Suite C, #135
Newport Beach, CA 92663
949-355-3698
Jen9491975@gmail.com

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all claims so triable.

June 13, 2024,

Respectfully submitted,

J. Janzen

Jennifer Janzen
Plaintiff, Pro Se
120 Tustin Ave, Suite C, #135
Newport Beach, CA 92663
949-355-3698
Jen9491975@gmail.com